IN THE SUPREME COURT OF THE STATE OF KANSAS

CCR No. 1318

In the Matter of APRIL C. SHEPARD,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 6, 2019. Public reprimand.

*Todd N. Thompson*, appointed disciplinary counsel for the State Board of Examiners of Court Reporters, argued the cause and was on the brief for the petitioner.

*James G. Chappas*, of James G. Chappas, Chartered, of Topeka, argued the cause and was on the brief for the respondent.

PER CURIAM: This is an original proceeding in discipline filed by the State Board of Examiners of Court Reporters (Board) against the respondent, April C. Shepard, a court reporter at the Wyandotte County District Court who previously served in that capacity at the Shawnee County District Court.

On June 13, 2018, the appointed counsel for the Board filed a formal complaint against the respondent alleging she failed to maintain impartiality toward a defendant in a criminal trial she reported, a violation of Rules Adopted by the State Board of Examiners of Court Reporters, Board Rules No. 9.F.9. (2019 Kan. S. Ct. R. 419). On July 19, 2018, the respondent timely filed an answer to the formal complaint. In her answer, the respondent admitted to "the allegations contained in all paragraphs of the Formal Complaint."

1

On January 2, 2019, the Board filed an order approving a proposed cease and desist order submitted by the respondent's attorney and the Board's appointed counsel. In its order the Board scheduled a hearing to determine whether the cease and desist order should be private or public.

On April 11, 2019, a hearing was held on the formal complaint before a panel of the Board. Respondent appeared in person and by her counsel. The hearing panel heard argument on whether the agreed upon cease and desist order would be private or whether the Board would recommend discipline to the Kansas Supreme Court.

Upon conclusion of the hearing, the panel took the matter under advisement. On May 20, 2019, the panel issued its findings and unanimous recommendation. [Note: The panel refers to Rule 366, which was repealed in 1982; however, the correct cite should be to the Rules Adopted by the State Board of Examiners of Court Reporters, Board Rules Nos. 1-9.]

"*Board Recommendation Concerning Discipline*

. . . .

"1.     Respondent previously worked at the Shawnee County District Court.

"2.     In 2012, while working in Shawnee County, Respondent was a court reporter for the highly publicized murder trial of Dana Chandler.

"3.     Chandler was convicted of killing her ex-husband and his girlfriend. The conviction was appealed, alleging prosecutorial misconduct, insufficient evidence, and prejudicial publicity.

2

"4.     An article in the *Topeka Capital Journal* on October 29, 2017, discussed the murder, conviction, and appeal, and included alleged Facebook quotes from Respondent. Specifically, the article attributed to Respondent the following comments about the Chandler trial:

'Were you there listening to it? I was,' said April Shepard, a court reporter who worked the Chandler trial. 'I will not say that I agree with everything Jacqie Spradling said or did, but it didn't change anything. Dana Chandler is not innocent. She may get a new trial, but the outcome will be the same. No one else would've done this but Dana Chandler.'

"5.     Copies of screen shots from Facebook that are attributed to Respondent include the following (some dates may not be accurate):

'a.     Oh, stop. Dana Chandler is not innocent. She may get a new trial but the outcome will be the same. (April 7, 2016)

'b.     No one else would've done this but Dana Chandler. (April 18, 2016)

Well, I can tell you that it won't be that judge because JUDGE PARRISH is a fair judge and I know her well. Just because he says this doesn't make it so. Were you there listening to it, I was. I will not say that I agreed with everything Jackie Spradling said or did, but it didn't change anything. (April 19, 2016)

'c.     I don't believe Jackie [S]pradling lied. (August 2016)

'd.     Look, I was there, I was the court reporter for that trial and, yes, Jackie pushed a little too far at times, but there was nothing more damning than those telephone jail calls between Dana Chandler and her sister Shirley and that's what changed it for everyone if they thought she didn't do it before. The fact of the matter is

3

she's the only one that could have done it and would have done it. She had a major axe to grind with Karen Harkness and Mike Sisco for she stalked them repeatedly. (January 2017)

'e.    It's not that wrong if you think about how many cases there are. They're more right than they are wrong. (June 25, 2017)

'f.    Linda Coe, I'm confident they got the right perpetrator in this case. Look, I was there, I reported that whole case. I saw firsthand this case. I do agree, though, a lot of times they have prosecuted the wrong person and I believe those people should be exonerated however it happens. This case however is very different. (July 12, 2017)'

"6.    Respondent acknowledges that the above posts were her posts. She had forgotten about a couple of the posts, but has stated she will 'take ownership of them.'

"7.    Chandler's appeal was most recently argued to the Kansas Supreme Court in January, and in April 2018, the conviction was overturned. *State v. Chandler*, 307 Kan. 657, 414 P.3d 713 (2018).

"8.    Respondent defends her conduct by contending:

a.    She handled herself in an impartial and objective manner while she was a court reporter for the trial; the trial occurred four or more years prior to the Facebook posts.

b.    She no longer works for the Shawnee County District Court.

c.    She has had high profile cases before, such as the John Robinson barrel-murderer case in Johnson County, and she refrained from any public comments in that instance, despite many inquiries.

4

d. She had a sense of the Chandler case 'being over' because it had been a couple of years since the trial, and she knew she would never be involved again because she had moved to Wyandotte County.

e. Respondent does admit that after re-reading the social media posts that 'in hindsight, perhaps that was not the appropriate thing to do,' and she stated: 'It won't happen again.'

"Therefore, Respondent admits that her conduct violated Rule No. 9.F.9.

"Remaining at issue was appropriate discipline of the Respondent. Respondent requests private censure. DC [Disciplinary Counsel] objects. The Board took the matter under advisement. The matter is ripe.

"DISCUSSION

"The Rules Relating to the State Board of Examiners of Court Reporters (2019 Edition) were established by the Kansas Supreme Court. Rule 366 [Board Rule No.] 9.E. refers to Disciplinary Sanctions. It states:

'The Board may, based upon clear and convincing evidence presented, take one or more of the following actions:

1. Dismiss the charges.

2. Admonish the certificate holder.

3. Issue a private order of cease and desist.

4. Recommend discipline to the Kansas Supreme Court.
"Discipline" means public reprimand, imposition of a period of probation with special conditions which may include additional professional

5

education or re-education, suspension of the certificate, or revocation of the certificate. In addition to any discipline imposed pursuant to these rules, if the certificate holder is a state employee, the reporter may be disciplined under the Rules Relating to the Kansas Court Personnel System.'

"Both DC and Respondent urge the Board to determine the issue of sanctions informally, pursuant to Rule 366 [Board Rule No.] 9.D.8., which states: 'Nothing in these rules shall prevent the Board from informally stipulating and settling any matter relating to the certificate holder's discipline.' The Board has determined, however, that Rule 366 [Board Rule No.] 9.D.8. does not allow the Board to override the requirements of Rule 366 [Board Rule No.] 9.E. Rather, Rule 366 [Board Rule No.] 9.D.8. only allows the Board to determine informally by stipulation such matters as the facts of the case, which has been done here. It does not allow the Board to determine finally any discipline more serious than a private order of cease and desist. This interpretation is supported by the following instruction, found at Rule 366 [Board Rule No.] 9.D.7.: 'At the conclusion of the hearing, the Board may take any of the actions set forth in subsection E of this rule.' Should the Board find that any form of discipline listed in Rule 366 [Board Rule No.] 9.E.4. is appropriate under the circumstances of this case, it may only recommend such discipline to the Supreme Court.

"Turning to the subject of appropriate discipline, the DC urges the Board to find that such discipline should be public for several reasons. First, public discipline provides transparency to the public that the Respondent has violated the rules and is being punished for that violation. This transparency fosters public confidence in both Board oversight of certificate holders and the accountability to which certificate holders are held. Without public discipline, the public may believe that violation of the rules is ignored, especially if research into allegations of misconduct shows nothing at all. A logical—though incorrect—inference could be that nothing happened, or that the only action taken was for the supposedly neutral authority to hide the problem. We can assure the public we take our role seriously, but they feel more assured when we can show them we do.

6

"Second public discipline educates other certificate holders that certain activities violate the rules. It serves to remind them of the rules and what types of things may get them in trouble.

"Third, there is a deterrence effect from public discipline. At the least, it is an embarrassment that others will want to avoid. Further, it will warn other certificate holders that seriously inappropriate behavior may be punished harshly and be quite costly in terms of lost income, in addition to the embarrassment. In this way, public discipline in one case works to prevent others from engaging in the prohibited conduct for fear that they, too, might be punished similarly.

"In contrast, the Respondent argues that private censure is the most appropriate form of discipline under the facts of this case. To support her assertion, she presents several mitigating considerations.

"First, Shepard has stipulated to what she did and that she violated the Rules. In doing so, Respondent saved the Board the time and resources necessary for a trial.

"Second, Respondent asserts the violations themselves are not serious enough to justify some form of public discipline. The violation involved a Facebook conversation after the defendant in *State v. Dana Chandler* had already been convicted, and after the Respondent had completed all her duties in the case. The comments weren't that bad, and could have been ignored had the case been less well-known. Respondent also believes the pressure placed on her by members of the public have 'punished' her in ways that should somehow be acknowledged by the Board as punishment enough in themselves.

"Third, the Rule violated is too vague to teach other Reporters much. Rule 366 [Board Rule No.] 9.F. sets forth Prohibited Conduct. Subsection 366 [Board Rule No.] 9.F.9. prohibits a certificate holder from '[failing] to maintain impartiality toward each participant in all aspects of reported proceedings or other court-related matters.' To the point, this rule does not spell out the kinds of things that might be considered partial. Further, 'partial' is not defined within the context of the Rules. In addition, there is nothing in the Rules to indicate requisite intent, nor is there any mention of prejudice that

may—or may not—result from the 'partial' actions. After all, the duties of a Court Reporter are primarily ministerial, as the Reporter has no discretion in what to record. He must record everything. Thus, the impartiality of a Reporter is irrelevant to the record. Ultimately, public discipline would not teach other Reporters anything because the Rule is too vague to provide Notice or warning of what to avoid.

"Finally, the Respondent urges leniency because she is an excellent court reporter who has fulfilled her obligations well and professionally for more than 20 years.

"After considering all arguments and evidence, both aggravating and mitigating, the Board finds by clear and convincing evidence that the Respondent violated Rule 9.F.9. of the Rules Adopted by the State Board of Examiners of Court Reporters. The Board hereby recommends to the Supreme Court that Respondent receive a PUBLIC REPRIMAND. The Board is persuaded by the arguments of the DC, and believes the actions of Respondent are serious enough to justify this discipline.

"The actions taken by Respondent surrounded one particular—and highly publicized—murder trial for which the Respondent took the official record. Shepard's Facebook comments could not have been more clearly partial against the Defendant in that case. She asserts that she felt she was at liberty to make these comments about the case because the trial was essentially over and her official role had ended. Those assertions are not persuasive. A case on appeal is most certainly not concluded, and an Official Court Reporter should know that. Moreover, Respondent should have known that her comments would carry the strength of real or imagined authority because of her official role in the trial and the fact that she had a front-row seat to observe all the evidence."

DISCUSSION

This action was initiated by the Board through its appointed disciplinary counsel. Respondent was given adequate notice of the allegation that she engaged in conduct prohibited by the Rules Adopted by the State Board of Examiners of Court Reporters.

8

Respondent was also given timely notice of the hearing before the panel and the hearing before this court. Respondent was present at each hearing.

The respondent does not contest the findings by the hearing panel. Indeed, she stipulated to the facts and admits she violated Board Rule No. 9.F.9. (2019 Kan. S. Ct. R. 419) (failure to maintain impartiality). Furthermore, the findings of the hearing panel establish by clear and convincing evidence the alleged misconduct. The evidence also supports the panel's conclusions. We adopt the panel's findings and conclusions. We, accordingly, find respondent engaged in prohibited conduct by failing to maintain impartiality toward each participant in a trial she reported for in district court.

The only remaining issue before us is the appropriate discipline for the respondent's violation. The Board may recommend the following discipline to the Kansas Supreme Court: (1) public reprimand; (2) imposition of a period of probation with special conditions which may include additional professional education or re-education; (3) suspension of the certificate; or (4) revocation of the certificate. Board Rule No. 9.E.4. (2019 Kan. S. Ct. R. 418).

Prior to the hearing before this court, the disciplinary counsel agreed with the hearing panel that a public reprimand was the appropriate discipline. During rebuttal closing argument, the disciplinary counsel argued it was apparent that more than a public reprimand was appropriate and some "educational discipline" was needed. The respondent requested that the cease and desist order be private.

In support of her requested discipline, respondent's arguments are summarized as follows: (1) the rule prohibiting partiality lacks a clear definition; (2) she was not partial toward either side during the actual reporting of the trial; (3) the trial and jury conviction occurred several years before she made the comments and she had moved to another

county so she knew she would never be involved with the case again; (4) she had been "baited" into making the comments; (5) she did not make these comments to any public news reporter or outlet; (6) she has cooperated with the investigation, apologized, and promised not to make the same mistake; and (7) this is her first violation and she has remained in good standing during her more than 25 years of reporting.

Our judicial system derives its authority from being fair and just. To accomplish this, the courts and officers of the court must maintain an image of fairness and impartiality in the administration of justice. See *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 135 S. Ct. 1656, 1666, 191 L. Ed. 2d 570 (2015) ("Unlike the executive or the legislature, the judiciary 'has no influence over either the sword or the purse; . . . neither force nor will but merely judgment.' The judiciary's authority therefore depends in large measure on the public's willingness to respect and follow its decisions. [Citation omitted.]"). Court reporters employed by the district courts are officers of the court. Supreme Court Rule 352 (2019 Kan. S. Ct. R. 412). As such, they have an ongoing duty to avoid conduct that may be perceived by the public as partial in matters that come before the court.

With this background, we address respondent's arguments for a private cease and desist order.

*The meaning of impartiality*

Board Rule No. 9.F. sets forth conduct that is prohibited by a court reporter, which includes failure to maintain impartiality toward each participant in *all* aspects of reported proceedings or other court-related matters. Although respondent concedes that in hindsight her comments were inappropriate, she argues that impartiality should be better

10

described and examples should be given in the Rules. But impartiality is an underlying principle of our justice system.

For example, the Rules Relating to Judicial Conduct are not much more specific. Supreme Court Rule 601B, Canon 1, Rule 1.2 (2019 Kan. S. Ct. R. 441) states: "A judge shall act at all times in a manner that promotes public confidence in the *independence, integrity*, and *impartiality* of the judiciary . . . ." Comment 3 explains why the Canon does not give examples of how these principles could be violated: "Because it is not practicable to list all such conduct, the Rule is necessarily cast in general terms." (2019 Kan. S. Ct. R. 441). Impartiality is not a complex concept. It is defined as absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge. Rule 601B, Terminology (2019 Kan. S. Ct. R. 436).

Respondent knew the case she was discussing was on appeal because her Facebook comment acknowledged the possibility that the defendant may get a new trial but opined the defendant would be found guilty again. This comment, along with her other comments that spanned almost a year and a half, completely ignores the presumption of innocence that defendant carries throughout a trial. Respondent's comments are concrete and classic examples of bias or prejudice against a party.

*The context of the comments*

Respondent argues that her inappropriate comments are mitigated by the circumstances. However, the fact the first trial was held a few years before respondent made the comments is of no importance when considering mitigating factors. Respondent was still employed in the judicial system as a court reporter. How long after a trial she showed partiality against the defendant does not matter. Nor does it matter if she feels she

11

was tricked or baited into making the comments. The respondent had an ethical duty to refrain from making them. Furthermore, the record clearly shows the respondent was not drawn or provoked into making these comments; they were her opinions and they were initiated by her. Finally, respondent's argument that her comments should be considered less serious because they were made on a social media platform rather than a media outlet is without merit. What matters is the comments were made in public.

*Respondent's behavior after the complaint*

Respondent's conduct was egregious, and respondent agrees her comments, which were made over a year's period of time, damaged her profession. However, once a formal complaint was filed against her, she cooperated with the investigation, agreed she made inappropriate comments, apologized, and stated she will not make the same mistake again. These are mitigating factors that we consider in determining the appropriate discipline.

Having considered all matters raised, we find the Board's recommendation for a public reprimand to be persuasive.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that April C. Shepard be and is hereby disciplined by public reprimand in accordance with Board Rule No. 9.E.4. of the Rules Adopted by the State Board of Examiners of Court Reporters.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports.

12

MICHAEL J. MALONE, District Judge Retired, assigned.[1]

---

[1]**REPORTER'S NOTE:**  Retired District Judge Malone was appointed to hear CCR No. 1318 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court created by the retirement of Justice Johnson.